**ROBERTSON COUNTY, TENNESSEE,**
**Plaintiff–Appellee,**

v.

**BROWNING–FERRIS INDUSTRIES OF TENNESSEE, INC., and Custom Land Development, Inc., Defendants–Appellants.**

Court of Appeals of Tennessee,
Middle Section, at Nashville.

May 11, 1990.

Application for Permission to Appeal
Denied by Supreme Court
Nov. 5, 1990.

---

W. Ovid Collins, Jr., C. Bennett Harrison, Jr., W. Gregory Miller, Cornelius & Collins, Nashville, Clyde W. Richert III, Springfield, for plaintiff-appellee.

Frank C. Gorrell, Richard Lodge, Margaret C. Berry, Bass, Berry & Sims, Nashville, for defendants-appellants.

## OPINION

LEWIS, Judge.

This is an appeal by defendants, Browning–Ferris Industries of Tennessee, Inc. (BFI) and Custom Land Development, Inc. (Custom), from the trial court's granting of an injunction permanently enjoining BFI from using property leased from Custom "as a sanitary landfill without zoning approval from Robertson County" after finding BFI's "planned use of the real property as a sanitary landfill is in violation of the Robertson County zoning ordinance."

## THE CASE

On 6 September 1988, the plaintiff Robertson County, Tennessee (Robertson County) filed a declaratory judgment action in the Circuit Court for Robertson County seeking a declaration that "all pertinent provisions of the Robertson County zoning ordinance are legal and lawful land use regulations," that BFI and Custom's intended use as a sanitary landfill of 400 acres of real property (the property) owned by Custom and leased by Custom to BFI was contrary to "current agricultural zoning" and that such use be "permanently prohibited."

On that same date, BFI and Custom filed a declaratory judgment action in the U.S.

District Court for Middle Tennessee in which they sought injunctive relief and a declaration concerning the validity of the Robertson County zoning ordinance. BFI and Custom also removed Robertson County's declaratory judgment suit from the Circuit Court for Robertson County to the U.S. District Court pursuant to 28 U.S.C. § 1441. However, the District Court determined that there were issues of state law that were determinative without reaching the constitutional issues raised by BFI and Custom. The District Court then remanded plaintiff's suit to the Circuit Court for Robertson County.

On remand, BFI answered and filed a counterclaim seeking a declaratory judgment (1) that the zoning ordinance was invalid because it exceeded the County's authority and was contrary to the Tennessee Solid Waste Disposal Act, Tenn.Code Ann. § 68–31–101, *et seq.* (the Act), (2) that the zoning ordinance was unconstitutional, and (3) for an injunction enjoining the County from enforcing the zoning ordinance and interfering with BFI's operation of a sanitary landfill in Robertson County.

BFI alleged in its counterclaim that under the zoning resolution adopted by Robertson County in 1972 and presently in effect "there is no zoning district in Robertson County in which a sanitary landfill is a permitted use. There is no provision whatsoever in the Zoning Resolution for the construction or operation of a sanitary landfill in Robertson County, even as a special use, variance, or on appeal."

In its answer to BFI's counterclaim, Robertson County admitted, *inter alia,* "that the Zoning Resolution contains no provision for the construction or operation of a sanitary landfill by private parties for profit."

### THE FACTS

Robertson County, located in Northern Middle Tennessee, has a population of approximately 40,000 persons.

BFI is a private corporation engaged in the business of collecting and disposing of solid waste. Custom is the owner of 400 acres of land located in an area zoned agricultural which it leased to BFI. BFI and Custom entered into the lease on 2 September 1988.

Robertson County adopted the zoning resolution in 1972. The zoning resolution as adopted did not allow a sanitary landfill, nor has it since been amended to allow one.

Robertson County does own and operate its own landfill. The County's operation of its landfill predates the adoption of the 1972 zoning resolution. Robertson County's landfill is approved by the Tennessee Department of Health and Environment in accordance with the Tennessee Solid Waste Disposal Act. Robertson County is presently expanding its landfill to meet future needs.

Robertson County charges fees for disposing of waste in its landfill and accepts waste from commercial transporters such as BFI and also accepts waste generated in other counties and other states.

In its attempt to construct a landfill on the 400 acres leased from Custom, BFI had engineering studies conducted in order to apply for a permit to construct and operate a sanitary landfill under the provisions of the Tennessee Solid Waste Disposal Act. BFI incurred considerable expense in doing so. BFI also had a traffic study conducted which shows that access roads to the property are more than adequate.

On 17 November 1986, the County Commission of Robertson County held a public hearing at which it considered an amendment to the 1972 zoning resolution. This amendment was recommended by the Robertson County Planning Commission and would have allowed sanitary landfills as a "use permitted on appeal" for land zoned industrial C. The Robertson County Commission rejected the amendment by a vote of 24 to 0.

BFI, with full knowledge that the zoning resolution did not permit a sanitary landfill, applied to the Tennessee Department of Health and Environment for a permit to operate a landfill on the property.

On 18 August 1988, the Department of Health and Environment issued a permit to BFI authorizing it to operate a sanitary landfill on the property.

On 6 September 1988, BFI opened the sanitary landfill on the property and filed its declaratory judgment action in the U.S. District Court at the same time. Also, on 6 September 1988, the trial court issued a temporary restraining order which was served on BFI on the same date. BFI ceased operations of the landfill immediately.

## THE ISSUES

We first discuss BFI's issue of "[w]hether the deposition of TDHE employee Tom Tiesler and certain stipulations were irrelevant and the trial court erred in admitting the deposition and stipulations into evidence."

On 23 February 1988, Robertson County filed the deposition of Tom Tiesler, the Director of Solid Waste Management for the State of Tennessee. The deposition was "repeatedly referred to in arguments of counsel for the plaintiff at the trial of this cause on June 27, 1989. No objection was ever raised by counsel for the defendant to any of this argument." The trial court "considered [it] as part of the record ... and referred to it in the Memorandum Opinion."

Following the trial, Robertson County moved to reopen the proof. The motion was granted and the deposition of Tom Tiesler was formally admitted into evidence. BFI objected to the "relevancy and materiality of the deposition."

■ It was within the sound discretion of the trial court to reopen the proof and admit into evidence the Tiesler deposition. *See Inman v. Aluminum Co. of Am.*, 697 S.W.2d 350 (Tenn.App.1985); *Strickland v. City of Lawrenceburg*, 611 S.W.2d 832 (Tenn.App.1980). This Court will not reverse the trial court's admission of evidence absent a showing of abuse of discretion. *Miller v. Alman Constr. Co.*, 666 S.W.2d 466 (Tenn.App.1983). No abuse of discretion in admitting the Tiesler deposition appears in this record.

We are also of the opinion that Mr. Tiesler's testimony is relevant. It was BFI's insistence at trial that the Tennessee Solid Waste Disposal Act had, in effect, given all authority to the Solid Waste Disposal Division of the Tennessee Department of Health and Environment to regulate sanitary landfills. This is contested by Robertson County. Mr. Tiesler's deposition speaks in part to that very point.

We are of the opinion that the evidence concerning the daily average number of vehicles going into the Bordeaux landfill in Davidson County and an incident that occurred at the Bordeaux landfill in 1988 were irrelevant to the issues here. However, the case is de novo in this Court. We have disregarded this evidence in arriving at our decision.

Robertson County, at least to some extent, relies on 1989 Tenn.Pub. Acts Ch. 515. Robertson County adopted its zoning ordinance in 1972. Section 6(b) of Ch. 515 provides that it is not applicable to counties that adopted zoning ordinances prior to 1 October 1988.

Robertson County also argues that pursuant to Tenn.Code Ann. § 5–19–101, *et seq.*, it has the authority to regulate the collection and disposal of waste within the County.

■ Tennessee Code Annotated § 5–19–101 provides that "[t]he several counties of this state are hereby authorized to provide garbage and rubbish collection services and/or garbage and rubbish disposal services to the entire county or to special districts within the county as provided herein." *Id.*

Tennessee Code Annotated § 5–19–101 merely allows the county, if it so desires, to provide garbage collection and disposal services. Nothing in the statute authorizes the county to ban private garbage collection and disposal services.

Tennessee Code Annotated § 5–19–101, *et seq.* is inapposite to the facts in this case.

■ We next discuss BFI and Custom's issue of "[w]hether the Robertson County zoning ordinance is unlawful" because it totally excludes sanitary landfills anywhere in the county.

"Before the advent of comprehensive zoning laws,[1] land uses were controlled mainly under the law of nuisances and restrictive covenants." 82 Am.Jur. 2d *Zoning and Planning* § 1 (footnotes omitted).

"A municipality, county, or other unit of local government has no inherent power to enact zoning laws, and the power of a local government to accomplish zoning exists only by virtue of authority delegated from the state." *Id.* at § 7 (1976) (footnotes omitted).

Tennessee counties derive the power to zone "in the portions of such county which lie outside of municipal corporations" from Tenn.Code Ann. § 13–7–101(a)(1).

Counties are not required to zone, but when they do, the zoning "regulations shall be designed and enacted for the purpose of promoting the health, safety, morals, convenience, order, prosperity and welfare of the present and future inhabitants of the state and of its counties." Tenn.Code Ann. § 13–7–103.

We have reviewed Tenn.Code Ann. § 13–7–101, *et seq.* (the enabling act) and are convinced that nothing in the enabling act authorizes a county to totally exclude a lawful business from the county. A total prohibition would not be unlawful if it can be shown that the business is one which is particularly objectionable and undesirable and the prohibition appears *prima facie* to be designed to protect the public interest. That is not the case here.

■ The general validity and reasonableness of an ordinance is presumed. *Beer Board v. Brass A Saloon of Rivergate, Inc.,* 710 S.W.2d 33, 35–36 (Tenn.1986). However, once the total exclusion of a legitimate business is shown, the presumption is overcome. *Moyer's Landfill, Inc. v. Zoning Hearing Bd.,* 69 Pa.Commw. 47, 450 A.2d 273 (1982); *Appeal of Green and White Copter, Inc.,* 25 Pa.Commw. 445, 360 A.2d 283 (1976). The burden then shifts to the zoning authority to establish

that total exclusion is for the "purpose of promoting the health, safety, morals, convenience, order, prosperity and welfare of the present and future inhabitants of the state and [Robertson County]." Tenn.Code Ann. § 13–7–103. *See Ottawa County Farms, Inc. v. Township of Polkton,* 131 Mich.App. 222, 345 N.W.2d 672 (1983).

We find nothing in the record before us to show that the health, safety, morals, etc. will be promoted by totally excluding sanitary landfills from Robertson County.

The only evidence shows that

placement of a solid waste landfill ... would result in lower average property values of properties not only immediately adjacent to, but also in the general vicinity of, the landfill site. Though the location of a rock quarry, mining use, or automobile junk yard would lower the value of property immediately adjacent to those uses, the property devaluation would not be as regional or, in other words, as wide spread, as that resulting from the placement of a solid waste landfill.

The ordinance insofar as it totally excludes sanitary landfills is invalid. However, BFI's insistence that since it is invalid an injunction should issue "permanently enjoining the County from interfering with [BFI's] operation of a sanitary landfill on the" 400 acres it leases from Custom is without merit.

BFI argues that while

courts dislike the possibility of leaving a given area 'unzoned,' invalidation of the Robertson County zoning ordinance would not leave a significant void of regulation in the present case since sanitary landfills are subject to state regulations under the Solid Waste Act and since the Tennessee Department of Health and Environment has already approved BFI's plan and has issued a permit to BFI to operate a sanitary landfill on the property.

---

1. Zoning is "the division of a municipality or other local community into districts and the regulation of buildings and structures according to their construction and the nature and extent of their use, or the regulation of land according to its nature and uses. 'Zoning' has also been defined as the legislative division of a community into areas in each of which only certain designated uses of land are permitted so that the community may develop in an orderly manner in accordance with a comprehensive plan." 82 Am.Jur.2d *Zoning and Planning* § 2 (1976).

In support of its insistence, BFI relies on *Ottawa County Farms, Inc. v. Township of Polkton*, 131 Mich.App. 222, 345 N.W.2d 672 (1983), a case in which the court held that the county's total exclusion of sanitary landfills was invalid and did not remand the case to allow the township of Polkton to enact a valid ordinance. *Id.* 345 N.W.2d at 676. In *Ottawa*, the court found that "invalidation of defendant's ordinance did not leave a significant void of regulation since landfills are subject to state regulation under the Solid Waste Management Act...." *Id.* The court further held that the Michigan Solid Waste Management Act and the regulations of the Department of Natural Resources provided sufficient regulation. *Id.*

Mr. Tiesler, the Director of the Tennessee Solid Waste Division, testified that he had no knowledge of the Tennessee Department of Health and Environment in its consideration of the Solid Waste Act assessing anything other than possible effects on the environment in deciding whether to issue a sanitary landfill permit.

BFI also argues that remanding this cause allowing the County to amend its ordinance would amount to retroactive zoning and divest it of a vested right.

■ We respectfully disagree. Robertson County, by being given an opportunity to amend its zoning ordinance, would not deprive BFI of any vested right to operate a landfill.

BFI was fully aware that private sanitary landfills would not be permitted under the Robertson County zoning ordinance. Notwithstanding this knowledge, BFI leased the property from Custom and invested almost three hundred thousand dollars in securing a landfill permit from the state. There is nothing in this record to show that BFI was led to believe that a landfill would be allowed on the agriculturally zoned property. BFI did not have a "vested right" on the basis of its investment. BFI's reliance on *Howe Realty Co. v. City of Nashville*, 176 Tenn. 405, 141 S.W.2d 904 (1940) and *State ex rel. SCA Chem. Waste Serv., Inc. v. Konigsberg*, 636 S.W.2d 430 (Tenn.1982) is misplaced.

■ Zoning decisions are matters for the legislative bodies of Tennessee and not the courts. In *Crabtree v. City Auto Salvage Co.*, 47 Tenn.App. 616, 631–634, 340 S.W.2d 940, 947–948 (1960), this Court stated:

> [I]t must never be forgotten by the Courts that this great power [the power to zone] is lodged in the legislative branch of the government composed of representatives directly elected by the people for the purpose of making laws. Its exercise is not intended for the Courts whose business is to apply existing legal principles.
>
> ....
>
> It seems to us that the relief sought by the complainants and granted by the Chancellor, is a matter of zoning which the Court is asked to declare and enforce. But, as hereinabove indicated the Courts are not equipped to do this, and should not invade the legislative field of zoning which should be left to the representatives charged with that duty.

*Id.* 340 S.W.2d at 947–48.

■ Until such time as Robertson County has an opportunity to amend its zoning ordinance, this Court will not indulge in "judicial spot zoning."

In view of our holding, we deem it unnecessary to discuss the constitutional issues raised by BFI and therefore pretermit them.

The judgment of the trial court that Robertson County "may legally exclude all commercial landfills by zoning regulations" is reversed. The injunction issued by the trial court will remain in effect and, on remand, the trial court shall enter an order directing Robertson County to cure the defect in the zoning ordinance by creating a zoning classification for sanitary landfills.

The costs are assessed to Robertson County.

TODD, P.J., and CANTRELL, J., concur.